# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| ERIC LYLE WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 3:20-CV-3030-N |
| | ) | |
| BOBBY LUMPKIN, Director, Texas | ) | |
| Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## PETITIONER'S RENEWED MOTION FOR AUTHORIZATION OF FUNDS
## FOR MITIGATION SPECIALIST

BRUCE ANTON
Bar Card No. 01274700
UDASHEN | ANTON
8150 N. Central Expressway, Suite M1101
Dallas, Texas 75206
214-468-8100
214-468-8104 fax
ba@udashenanton.com

MARY MARGARET PENROSE
Bar Card No. 00788179
TEXAS A&M SCHOOL OF LAW
1515 Commerce Street
Fort Worth, Texas 76102
972-310-8669
817-212-3965
megpenrose@law.tamu.edu

AMY PICKERING KNIGHT
AZ Bar Card No. 031374
Admitted *pro hac vice*
KNIGHT LAW FIRM PC
3949 E. Broadway Blvd., Suite 288
Tucson, Arizona 85716
520-878-8849
amy@amyknightlaw.com

Attorneys for Petitioner

Petitioner Eric Lyle Williams, through undersigned counsel, hereby seeks funds, pursuant to 18 U.S.C. § 3599(f), for mitigation specialist services, which are reasonably necessary for the preparation of a Petition for a Writ of Habeas Corpus in this Court to establish a claim of ineffective assistance of trial counsel in preparing and presenting the mitigation case (the "IATC-mitigation" claim). The nature of this case requires services of an unusual character or duration. Counsel has consulted extensively with CJA budgeting attorney Meg Alverson regarding the requested funding.

Petitioner has sought and been denied funding for these services three times. First, on February 25, 2021, Petitioner filed a motion, publicly and served upon opposing counsel, requesting funds under 18 U.S.C. § 3599(f) (Doc. 25). This Court denied the motion without prejudice, citing the failure to tie the request to specific viable federal habeas claims (Doc. 26). Petitioner then filed, under seal, a motion for leave to file a revised funding request ex parte and under seal (Doc. 28), along with the proposed sealed request (Doc. 28-1), explaining two avenues by which he believed he would be able to present new evidence gathered in the proposed investigation and identifying the necessary areas of investigation. In a sealed order, this Court denied the motion for leave to file, and thus did not rule on the proposed sealed motion itself (Doc. 30). The sealed order stated both that Petitioner had not made a sufficient showing of a need for confidentiality and that the explanation of the necessary investigation in the proposed sealed motion itself remained insufficiently tied to a specifically delineated federal habeas claim. The Court indicated that further explanation of the investigations conducted by prior counsel was necessary. Petitioner then publicly filed, and served on opposing counsel, a second motion for leave to proceed ex parte and under seal (Doc. 35), along with a proposed sealed third version of the request for funding for the mitigation investigation (Doc. 36). Once again, this Court denied

specifically the motion for leave, rather than the funding request itself, in an order filed under seal (Doc. 37). However, the order, like the previous one, included not only a ruling about the showing on the need for confidentiality, but also an extensive discussion of the merits of the underlying request. Following this denial, the State, presumably unaware of this Court's under-seal denial of Petitioner's publicly filed motion for leave, filed an objection to the motion for leave (Doc. 39).

Petitioner now makes a new, publicly filed, request for the funds for this investigation, and requests an explicit ruling on the substantive request. In so doing, Petitioner maintains his objection to being forced to reveal strategy information and work product, and has omitted from this version information contained in the previous sealed version counsel cannot reveal without violating their ethical obligations to Mr. Williams. Should the lack of additional detail on strategic matters constitute a basis on which the Court intends to deny this request, Mr. Williams once again requests an opportunity to submit further information under seal.

## I.     BACKGROUND

Mr. Williams was a practicing attorney and eventually an elected Justice of the Peace in Kaufman County, Texas. In 2013, he was convicted of stealing three computer monitors from the County, which caused his disbarment and removal from office. He was then accused of murdering the Assistant DA and elected DA who had prosecuted him, as well as the DA's wife (although he was formally tried and convicted only for the murder of the wife). The alleged motive was revenge. Mr. Williams was represented at trial by the Regional Public Defender Office and in state habeas by the Office of Capital and Forensic Writs. He was sentenced to death in December 2014, and his state habeas petition was denied in September 2020.

## II.     LEGAL AUTHORITIES REQUIRING FUNDING

Federal petitioners in capital cases are entitled, under certain circumstances, to investigative and expert funds to develop their claims in federal court. 18 U.S.C. § 3599(f) provides, in pertinent part:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under subsection (g).

In enacting § 3599, Congress guaranteed indigent capital habeas petitioners "enhanced rights of representation," in light of "'the seriousness of the possible penalty and . . . the unique and complex nature of the litigation.'" *Martel v. Clair*, 565 U.S. 648, 659 (2012) (quoting § 3599(d)). The statute "aims in multiple ways to improve the quality of representation afforded to capital petitioners," including by "provid[ing] more money for investigative and expert services." *Id.* These measures reflect "a determination [by Congress] that quality legal representation is necessary in all capital proceedings to foster fundamental fairness in the imposition of the death penalty." *Id*. (internal citations and quotation marks omitted). Such resources should be available even early in a case where necessary to identify potential claims. *McFarland v. Scott*, 512 U.S. 849, 855 (1994) (holding that federal courts should grant resources for pre-petition assistance to "research[]" and "investigate[]" potential claims).

Section 3599 appointees have legal and ethical obligations to evaluate all potential federal habeas claims. The federal habeas statute and the applicable Rules of Procedure, for example, require federal habeas counsel to investigate and develop all available claims before they file a petition. Section 3599 counsel "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey*

*v. Zant*, 499 U.S. 467, 498 (1991); *see also* American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"), Guideline 10.15.1, commentary ("Collateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation . . . .").

Furthermore, because petitioners may excuse the failure to raise a claim in a prior phase of the litigation, federal habeas petitions can—and, in most cases, should—contain claims other than those raised on direct appeal or in state postconviction proceedings. *See* ABA Guideline 10.15.1(C) ("Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious . . . ."). Even seemingly "procedurally defaulted" claims must nonetheless be investigated to determine whether the default is excused. This standard of care requires § 3599 counsel to thoroughly review both the record and prior counsel's file, to investigate all procedurally viable claims not presented in state court, and to obtain additional evidentiary support for claims inadequately developed in the state-court proceedings.

*Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 566 U.S. 413 (2013), which established that the deficient performance of state habeas counsel can excuse procedural default of ineffective-assistance-of-trial-counsel ("IATC") claims, are the source of heightened obligations to investigate defaulted theories of relief. Under these cases, a state prisoner can excuse default by showing that state post-conviction counsel was deficient and that the underlying IATC is substantial (meaning that it has "some merit"). *See Martinez*, 566 U.S. at 14. Thus, federal habeas counsel must investigate the performance of trial, appellate, *and* state habeas counsel. *See Trevino*, 569 U.S. at 425; *Martinez*, 566 U.S. at 12. Recognizing the substantial professional obligations imposed by *Martinez* and *Trevino*, federal courts have authorized funding—both for

attorney time and ancillary services under § 3599(f)—in connection with IATC claims not raised in state habeas proceedings.

In *Ayestas v. Davis*, 584 U.S. ___, 138 S. Ct. 1080 (2018), the Supreme Court made clear that prisoners in a *Martinez* posture—as Mr. Williams is here—are entitled to § 3599 funding reasonably necessary to seek relief on defaulted IATC claims. In *Ayestas*, the petitioner had sought funding post-*Martinez* to permit federal habeas counsel to develop, for the first time, a claim that trial counsel performed ineffectively by failing to investigate mental health and substance abuse issues. The district court denied funding and the Fifth Circuit affirmed, reasoning that § 3599 funding could be denied where the applicant failed to show a "substantial need" connected to "a viable constitutional claim that is not procedurally barred." *Id.* at 1088 (quoting *Ayestas v. Stephens*, 817 F.3d 888, 895-96 (5th Cir. 2016)).

The Supreme Court reversed. In doing so, it explicitly rejected the Fifth Circuit's requirement that a petitioner tie his funding request to a viable claim that is not procedurally barred. That standard, the Court explained, was no longer appropriate in light of *Martinez* and *Trevino*. *Id.* at 1093-94. Instead, district courts faced with § 3599 funding requests should consider "the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way." *Id.* at 1094. This standard does *not* require an applicant "to *prove* that he will be able to win relief if given the services he seeks." *Id.* (emphasis original).[1] Rather, the question is whether "funding stands a *credible chance* of enabling a habeas

---

[1] Even before *Ayestas*, courts in this circuit recognized the need, post-*Martinez*, for § 3599 lawyers to identify, investigate, and develop IATC claims that may not have been presented in state court. *See, e.g.*, *Canales v. Stephens*, 765 F.3d 551, 571 (5th Cir. 2014) (determining that the petitioner showed *Martinez* cause and remanding for prejudice determination). On remand in *Canales*, the district court granted petitioner's request for funding to develop the factual basis of

petitioner to overcome the obstacle of procedural default." *Ayestas*, 138 S. Ct. at 1094 (emphasis added).

Section 3599 provides for representation even in situations where procedural defenses may bar or otherwise constrain federal habeas review. *See Christeson v. Roper*, 574 U.S. ___, 135 S. Ct. 891, 895 (2015) (petitioner entitled to substitute counsel under § 3599(e) even though he "faces a host of procedural obstacles to having a federal court consider his habeas petition"). Whether a federal habeas court can consider evidence developed in the first instance by federal habeas counsel could depend on many things, including (a) whether the state court adjudicated the claim on the merits; (b) whether the merits disposition was legally and factually reasonable under §§ 2254(d)(1) and (d)(2); (c) whether any of the new evidence fundamentally alters a superficially similar claim presented to a state court, *see Pinholster*, 563 U.S. at 186 n.10; *infra*; (d) if the claim is fundamentally altered, whether there is an effective state court remedy still available to the petitioner (§ 2254(b)); (e) if there is no available state remedy, whether the State asserts a procedural bar as a defense; and (f) whether the petitioner can excuse any otherwise applicable procedural bar. Because there is no way for this Court to determine now that it would be futile for federal habeas counsel to develop additional evidence, it would be an abuse of discretion to withhold § 3599 funding under *Pinholster* at this stage. *See Christeson*, 135 S. Ct. at 895 (holding

---

his defaulted claims under *Martinez*. *See Canales v. Director*, Order, No. 2:03-cv-69 (E.D. Tex. Sept. 21, 2015); *see also Newbury v. Stephens*, 756 F.3d 850, 857 (5th Cir. 2014) (awarding funding for purposes of *Martinez* litigation). On remand in *Trevino* itself, the Court "granted Petitioner's multiple requests for additional time to investigate and develop Petitioner's remaining claims for relief [under *Martinez* and *Trevino*] . . . and authorized Petitioner to expend resources in excess of the statutory cap." *Trevino v. Stephens*, 2015 WL 3651534, *1 (W.D. Tex. June 11, 2015). Also reflecting the emphasis on extra-record investigation, the Fifth Circuit has authorized appointment of "supplemental" § 3599 counsel to investigate *Martinez* issues in federal habeas cases where prisoners continue to be represented by conflicted state postconviction lawyers. *See, e.g.*, *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015); *Speer v. Stephens*, 781 F.3d 784, 786 (5th Cir. 2015).

lower court abused its discretion in refusing to substitute counsel under § 3599(e) in part because it was not "plain that any subsequent motion [under Fed. R. Civ. P. 60(b)] that substitute counsel might file on Christenson's behalf would be futile.").

### III.   *PINHOLSTER* DOES NOT PRECLUDE FACT DEVELOPMENT AND DE NOVO CONSIDERATION OF THE IATC-MITIGATION CLAIM.

This Court has suggested that 28 U.S.C. § 2254(d) precludes full consideration of the IATC-mitigation claim, because a *Wiggins*[2]-type claim was presented to the state courts and denied there. *See* Doc. 37 at 5. Again, this reasoning puts the cart before the horse, as a petitioner is entitled to funding under § 3599 if there is a mere "credible chance" that any procedural obstacles can be overcome *after* full investigation and development of a claim. *Ayestas*, 138 S. Ct. at 1094. Furthermore, this position conflicts with the plain text of the federal habeas statute and is foreclosed by an unbroken thread of decisional law about when a federal habeas claim is "the same" as a similar challenge previously presented to a state court. Because Mr. Williams's anticipated federal claim will contain materially different allegations, legal theories, and evidence from the claim presented to the state court, neither § 2254(d) nor *Pinholster* precludes merits consideration here. And because § 2254(d) and *Pinholster* do not preclude merits consideration, Mr. Williams may develop additional supporting facts and this Court should grant him adequate funding in order to do so.

> ### A.   Section 2254(d) and *Pinholster* Do Not Preclude Litigation When an IATC Claim Advanced in Federal Court Contains Allegations, Legal Theories, or Evidence That Differs Materially From Those of a Superficially Similar Claim Presented to the State Court.

Title 28, United States Code § 2254(d) only restricts relitigation of claims that were "adjudicated on the merits" in state court. The Court has suggested that the IATC-mitigation claim

---

[2] *Wiggins v. Smith,* 539 U.S. 510 (2003).

presented here is the same as the *Wiggins* claim decided on the merits in state court. Doc. 37 at 5.
As a result, the Court's position appears to be that § 2254(d) bars Williams from litigating the
anticipated IATC-mitigation claim—or developing facts to support it in this proceeding—unless
he satisfies one of the two exceptions specified in that subsection. Not so. The federal claim will
contain materially different allegations, legal theories, and evidence (although precisely what
evidence, Petitioner cannot say without being permitted to do the investigation necessary to
develop that evidence), so, under Fifth Circuit law, the anticipated federal claim was not
adjudicated on the merits in state court. *See Nelson v. Davis*, 952 F.3d 651, 671-72 (5th Cir. 2020)
("[N]ew evidence that fundamentally alters the legal claim or places the claim in a significantly
different legal posture can render it a new claim that was not adjudicated on the merits by the state
court.") (internal citations and alterations omitted); *Dickens v. Ryan*, 740 F.3d 1302, 1317, 1320
(9th Cir. 2014) (en banc) ("*Pinholster* does not bar Dickens from presenting evidence of his 'new'
IAC claim . . . [because] the new allegations and evidence 'fundamentally altered' that claim.")
(internal citation omitted); *but see Broadnax v. Lumpkin*, 987 F.3d 400, 409-10 (5th Cir. 2021)
(holding new evidence was properly disregarded by district court *where petitioner never argued
his claim was unexhausted*, while, in dicta, declining to recognize "*Pinholster*-exception theory").
Because the anticipated IATC-mitigation claim was procedurally defaulted in state court, this
Court can reach the merits *de novo* if Mr. Williams can demonstrate a *Martinez* excuse.
Accordingly, factual development of the claim is unrestricted by either § 2254(d) or *Pinholster*'s
interpretation of that section.

### 1. Section 2254(d) and *Pinholster* do not restrict litigation of claims that were not adjudicated on the merits in state court.

By its plain text, § 2254(d) bars relitigation only of claims that state courts "adjudicated on
the merits." *Pinholster* limits the evidence a federal court may consider in evaluating the legal

unreasonableness exception specified in § 2254(d)(1), but that section is only implicated if the federal claim is the *same claim* "adjudicated on the merits" by the Texas courts. *See* 563 U.S. at 181. Similarly, any inquiry into whether a petitioner is entitled to merits review because he satisfies § 2254(d)(2)—that is, because the state decision was based on an unreasonable factual determination—is relevant only if the *same claim* was "adjudicated on the merits" in state court. If the claim as presented in federal court was not "adjudicated on the merits" in state court, then neither § 2254(d) nor *Pinholster* restricts the power of a federal court to consider the claim or grant relief.

> **2. A federal claim was not adjudicated on the merits in state court if it contains allegations, legal theories, or evidence that differ materially from those supporting a superficially similar state claim.**

There is a well-developed Fifth Circuit rule for analyzing when a federal claim is the same as one presented and adjudicated on the merits in state court: whether the new allegations or evidence have "fundamentally" altered the claim that was previously presented to the state court. *See Ward v. Stephens*, 777 F.3d 250, 258-59 (5th Cir. 2015) (holding post-*Pinholster*, test for sameness is whether petitioner has presented federal court with "material additional evidentiary support . . . that was not presented to the state court," and finding sameness because petitioner's federal-court argument "varied only slightly" from claim presented in state court); *Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012) (holding a federal claim is the same when new evidence "merely supplements" the claim as presented in state court, but not when it "fundamentally alter[s]" it); *Anderson v. Johnson*, 338 F.3d 382, 386-88 (5th Cir. 2003) (relying on familiar fundamental-alteration test and concluding the allegations fell on the "same-claim" side of the line because both

the state and federal iterations of the claim alleged a failure to interview the same witness).[3] *See also* 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 23.3[c][ii], at 1231-32 (6th ed. 2011) ("The controlling standard seems to be that the petitioner exhausts the factual basis of the claim as long as she did not either fundamentally alter the legal claim already considered by the state courts or attempt to expedite federal review by deliberately withholding essential facts from the state courts.") (internal quotation marks and alterations omitted). In *Nelson*, the Fifth Circuit expressly held that the long-familiar fundamental-alteration test for sameness controls the *Pinholster* question. *See* 952 F.3d at 671.[4]

The Fifth Circuit has developed standards for determining when a claim asserted in federal court is "fundamentally" different from a superficially related claim previously advanced in state court. A federal claim exhibits fundamental alteration when it (1) includes new, material evidence that does more than "supplement" the existing record, *see Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014), (2) makes "crucial" new factual allegations, *see Smith v. Quarterman*, 515

---

[3] These post-AEDPA cases drew from pre-AEDPA rules about sameness that were developed in the context of exhaustion of state remedies. *See*, e.g., *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003) (holding that "[t]he addition of the psychological report and Kunkle's mother's affidavit detailing her mental illness and the mental illness of Kunkle's father, along with concrete instances of abuse of Kunkle, presents 'significant evidentiary support' not previously presented to the state court," rendering IATC claim unexhausted); *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) (holding claims were not the same where inmate presented "material additional evidentiary support to the federal court that was not presented to the state court"); *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983) (holding a federal claim had not been presented to state court where petitioner submitted "newly discovered evidence or other evidence not before the state courts" that placed claim in "significantly different and stronger evidentiary posture" than before).

[4] In *Nelson*, state post-conviction counsel had alleged that trial counsel deficiently failed to investigate Nelson's "background, history, family, and friends." *Nelson*, 952 F.3d at 672 (internal quotation marks omitted). Federal habeas counsel argued *Martinez* excused the procedural default of a forfeited IATC claim that trial counsel had deficiently failed to investigate, for sentencing purposes, the culpability of Nelson's co-conspirators. *See id.* at 670. Respondent argued *Pinholster* precluded the introduction of new evidence on the federal IATC claim, but the Fifth Circuit flatly rejected that view. *See id.* at 672. As the Court explained, the two IATC claims were not the same under *Ward*, therefore *Pinholster* was irrelevant. *See id.* at 672.

F.3d 392, 400 (5th Cir. 2008), or (3) otherwise "places the claim[] in a significantly different legal posture," *Anderson*, 338 F.3d at 387 (internal quotation marks and citations omitted). *See also Nelson*, 952 F.3d at 671 (inquiring whether facts, evidence, or allegations "fundamentally altered" claim so as to foreclose application of *Pinholster*). To be sure, the development of new evidence *alone* does not create a distinct claim. But additional evidence *does* create a new claim when, in isolation or in combination with new allegations, it satisfies any of the three conditions the Fifth Circuit has set forth. *See also, e.g.*, *Sells v. Stephens*, 536 Fed. Appx. 483, 492-93 (5th Cir. 2013) (analyzing IATC claim under *Martinez* when evidence and allegations of deficiency and prejudice in federal petition differed materially from corresponding evidence and allegations presented in state court).

## IV.  MR. WILLIAMS HAS A VIABLE IATC-MITIGATION CLAIM DISTINCT FROM THE CLAIM ADJUDICATED ON THE MERITS IN STATE COURT

Although state habeas counsel raised a claim of ineffective assistance of counsel for certain specific failings in the mitigation investigation, they failed to identify and raise other crucial failings in trial counsel's mitigation investigation and presentation. Mr. Williams now seeks to investigate those failings of trial counsel *not* addressed in the state habeas petition and adjudicated on the merits in state court. If the new evidence this investigation yields is sufficiently different from what state habeas counsel presented so as to fundamentally alter the claim, as Mr. Williams believes it will be based on a detailed review of the file, the IATC-mitigation claim now contemplated is a new, distinct claim that was not adjudicated on the merits in state court, and is not subject to § 2254(d), and thus also not subject to *Pinholster*. Mr. Williams will seek to excuse the procedural default by demonstrating that state habeas counsel was constitutionally ineffective

for failing to raise these different now-identified claims regarding trial counsel's deficient representation.

Crucially, a claim of ineffective assistance—either as a substantive claim or as a basis for overcoming a procedural bar under *Trevino*—requires a showing of prejudice. Thus, to litigate these claims, Mr. Williams must present the Court with the information that would have been discovered had trial counsel done the required investigation—information that state habeas counsel would already have discovered had they performed effectively. He cannot do so without himself conducting the investigation that should have been conducted before, and thus the funds to conduct that investigation are reasonably necessary pursuant to § 3599(f) and *Ayestas*.

A.  Trial Counsel's Mitigation Presentation

The mitigation presentation at trial, although lengthy,[5] was not based on a reasonable investigation. Trial counsel planned to pursue a brain damage/mental health investigation, but had taken only the initial steps, not the full necessary investigation, when they presented their case to the jury. They had not yet obtained brain imaging, and thus also did not reach the next step of using that imaging in combination with a comprehensive medical and life history investigation to obtain a full evaluation and opinion from a mental health professional or other necessary experts. They had not consulted with any medical experts other than a local family doctor. Nor had they completed a full investigation of Mr. Williams's family history. They also had not sufficiently investigated the events of Mr. Williams's life, especially following his graduation from high

---

[5] Counsel's performance in a mitigation investigation cannot be assessed based only on the number of witnesses presented at trial. *See, e.g., Benmore v. Chappell,* 788 F.3d 1151, 1171-77 (9th Cir. 2015) (ineffective assistance where counsel presented 40 witnesses in support of a "good-guy" theory while failing to investigate leads on drug use and brain damage). The Sixth Amendment requires not a particular type of presentation, but rather an adequate investigation prior to the decision about what to present. *Wiggins,* 539 U.S. 510.

school, had not done a thorough investigation of Mr. Williams's medical history, and had additionally failed to compile the information they collected into any coherent narrative, let alone the comprehensive social history that is the backbone of any reasonable decision-making about mitigation strategy. Instead, they presented a lengthy but superficial and disjointed case based on witnesses they could locate at the last minute, many of whom had not seen Mr. Williams in 20 years and/or did not know him well, without knowledge of what their alternative choices might have been.

The testimony at the state writ hearing confirms this was not a defense strategy, and trial counsel had not chosen this approach over the other possibilities based on a thorough investigation or on any kind of tactic. Lead counsel Matthew Seymour testified he "was in charge of the Special Issue 1, the future dangerousness issue" (Writ hearing transcript Vol 7, p. 46). Second chair John Wright, according to Seymour, was in charge of the brain damage investigation (p. 23), and mitigation witnesses were the job of Maxwell Peck, who joined the team during jury selection, and who, according to Seymour, never accessed the system Seymour had established for collecting information on mitigation witnesses (p. 20). Jill Patterson, who began to assist with mitigation in October (trial began December 1), stated that the team's witness folders she and Peck had access to had almost nothing in them—if the team had already collected any significant mitigation information, it was not made available to the team members preparing the presentation for trial (Defense Exhibit 61 ¶ 3). Patterson also stated the attorneys who questioned mitigation witnesses at trial appeared to be unaware of what information each witness had and thus did not ask them appropriate questions (*Id.* ¶ 7). Seymour, for his part, testified he instructed the team's primary mitigation specialist to choose 8 witnesses to focus on, a number he "just picked [] out of a hat." (p. 51). Seymour reported seeing the order of proof shortly before trial where "vast swaths" of the

14

witnesses had neither been interviewed nor served a subpoena (p. 53). Regarding Petitioner's mother, Seymour testified they "had made a tactical decision that John Wright, that would be his witness," but when they scheduled her deposition, Wright was not prepared to question her— Seymour had been "thinking the whole time that John had already done this, and he hadn't." pp. 59-60. Wright, for his part, when asked "[w]ho was in charge of the mitigation investigation on the team," identified novice mitigation specialist Stephanie Bell (p. 28). In short, the record reveals no thorough investigation at all, and no strategic choice of one plan over another, but rather an uncoordinated scramble—the team had not gathered or organized enough information to make any sort of informed strategic decision.

B.  State Court *Wiggins*-type Claim

The mitigation-related claim of IATC in the state writ specified three deficiencies: (1) not getting brain scans done in time[6] (2) not requesting the necessary expert assistance regarding brain damage and psychiatric functioning,  and (3) failure to present "Mr. William's life and his family history of trauma, dysfunction, addiction, poverty, and mental illness." They did not raise other available claims—for instance, a claim that trial counsel had failed to gather significant information about Mr. Williams's young adult life after he left home, had failed to construct a coherent social history narrative and provide that narrative to experts evaluating Mr. Williams, and had failed to fully investigate Mr. Williams's medical problems and their effects on his behavior. While all of these claims address problems with the mitigation investigation and presentation, the claims regarding brain imaging, psychiatric functioning, and family history simply did not bring before the state court the failures regarding unprobed eras in Mr. Williams's adulthood, the failure

---

[6] Trial counsel did ultimately secure an MRI of Mr. Williams's brain—*after* Mr. Williams was convicted and sentenced to death, as part of proceedings on a motion for a new trial.

to develop a coherent social history narrative, and, crucially, the failure to broadly and thoroughly investigate medical issues. The contemplated federal claim rests on entirely different allegations, different legal theories regarding counsel's duties, and, almost certainly, fundamentally different evidence.

State habeas counsel investigated Mr. Williams's family background and produced a narrative of both of his parents' histories. But it contains very little information about Eric himself. Where crucial periods of his adult life are addressed at all, they are skimmed over with a recitation of only the barest biographical facts. The already-litigated claim thus did not include the failure to collect this type of information about Eric after he moved out of the family home.

State habeas counsel also failed to thoroughly investigate Mr. Williams's complex medical history, including any detailed consideration of the development, treatment, and specific disease processes and effects of his apparently unusual case of diabetes (other than structural brain damage), inquiry into the effects of prescription drugs and unprescribed substances he used (separately and in combination), the interactions of his various conditions which also include liver failure, chronic headaches, sleep apnea, and depression, or possible physical or neurological origins for some of the increasingly bizarre behavior. The medical records obtained are facially incomplete, and state habeas counsel, narrowly focused on brain damage possibly related to diabetes, apparently never noticed this entire area of important investigation had been neglected.

State habeas counsel also failed entirely to recognize trial counsel's failure not simply to gather more information, but to generate a comprehensive social history from which they could intelligently choose a mitigation strategy and which they could present to experts to obtain reliable

16

evaluations.[7] The narrative presented in the state writ application makes no effort to integrate the information trial counsel *did* have, and state habeas counsel appears never to have recognized that failing to synthesize the available information is itself the provision of ineffective assistance. The state court cannot have adjudicated that claim, because state habeas counsel never raised it.

To support their narrow brain-related claim, State habeas counsel retained three experts. Two were never asked to evaluate Mr. Williams, but rather were asked to provide opinions based solely on the limited set of medical records provided to them—one was limited to confirming structural brain damage, the other to a history of uncontrolled diabetes. Nor did state habeas counsel obtain any kind of physical medical examination of Mr. Williams. They never obtained and provided these experts with complete medical records or a detailed social history, nor did they raise trial counsel's failure to do so with the state court.

The third expert was Dr. George Woods, a neuropsychiatrist. Dr. Woods determined Mr. Williams had a neurocognitive disorder and mood disorder, but lacking a detailed medical and social history, he was unable to arrive at a more specific understanding of what had gone wrong with Mr. Williams. This evidence is consistent with the limited claim state habeas counsel raised: failure to *request* expert assistance about *psychiatric functioning and brain damage*, not a failure to fully investigate Mr. Williams's medical history and its impacts on his life and behavior and a failure to construct a comprehensive social history.

---

[7] Federal courts have found ineffective assistance of trial counsel for deficient mitigation investigation where the failure "was not the quantity of sources consulted but the quality of the investigation and the assimilation of that information into a coherent mitigation case." *Ben-Sholom v. Ayers*, 566 F.Supp.2d 1053 (E.D. Cal. 2008); *see also Wiggins*, 539 U.S. at 524 (recognizing standard practice in 1989 included "the preparation of a social history report"). This claim was not presented to the state court. Mr. Williams will develop and present the merits of this claim when he files the petition. To the extent the merits are addressed here, it is only to demonstrate that this claim has *potential* merit, which is all that is required at this stage.

The evidence present counsel seeks to develop and present will fundamentally alter the claim, such that the contemplated federal claim was *not* adjudicated on the merits in state court, and is not subject to § 2254(d) or *Pinholster.* Failing to raise these IAC claims regarding investigation of adult life, creation of a comprehensive social history narrative and investigating medical history—which are rooted in accepted standards for capital defense and the ABA guidelines—in state habeas was constitutionally deficient, and, if present counsel can gather the information necessary to establish prejudice, as anticipated, state habeas counsel's neglect of the claims will permit their review via the exception to the cause-and-prejudice requirement recognized in *Martinez* and *Trevino.*

C.  Investigative Needs

To effectively litigate these failings of trial counsel that state habeas counsel failed to raise, the following investigation is reasonably necessary:

1. **Locate and interview witnesses to Mr. Williams's own adult experiences.** To date, it appears no counsel has located and interviewed most witnesses to key periods of Mr. Williams's life following his graduation from high school—including college, law school, and the series of brief jobs Mr. Williams worked before working for Kaufman County. Prior counsels' files contain some records and a handful of interviews but do not contain significant material reflecting thorough investigation in these areas.

2. **Creation of comprehensive social history narrative.**  Prior counsel did some records collection and a number of interviews, but neither trial nor state habeas counsel ever compiled these into a narrative or examined how they relate to one another. This time-consuming task, necessary to show prejudice from trial counsel's failure, is more

appropriate for mitigation specialists, who are trained and experienced in synthesizing this type of information and whose hourly rate is less than that of the attorneys.

3. **Complete investigation of medical problems.** Mr. Williams suffers from a large number of complex and inter-related health problems (including an especially difficult case of diabetes, depression, anxiety, liver problems, and sleep apnea), some of which experts have opined likely drastically affected his brain. There is no indication in the file of medical care Mr. Williams received prior to 1997, despite indications in the file that his diabetes diagnosis occurred in 1996. Nor has any prior counsel created a detailed chronology of Mr. Williams's medical care and, crucially, prescription medications—despite state habeas counsel's expert's statement that one of the medications Mr. Williams was prescribed could potentially have worsened his psychiatric symptoms. Trained mitigation specialists will need to do a much more careful review to allow an analysis of the complex interactions that were likely affecting Mr. Williams's body, brain, and behavior leading up to and at the time of the murders and to allow any future experts to gain an accurate understanding of Mr. Williams's history.

4. **Identification and compilation of necessary information for appropriate expert evaluation.** These deficiencies in the existing investigation led to either no expert opinions at all (trial) or opinions unlikely to be accurate or reliable because experts were given grossly insufficient information and not asked the necessary questions (state habeas). Mental health-related evaluations are always complex and require comprehensive background information.[8] That is even more true in this case where there is significant

---

[8] *See Jells,* 538 F.3d at 493 (counsel asked expert for psychological evaluation but "failed to provide him with . . . personal history records. . . Without the history and records Dr. Eisenberg was unable to perform the requested psychological evaluation.")*; see also* Richard Dudley &

medical complexity and an identified period of decompensation. Establishing the full prejudice from trial counsel's failure to investigate the events of Mr. Williams's adult life and medical history and failure to construct a social history narrative will entail learning what opinions qualified experts could have provided if they had been given this information as contemplated by prevailing professional standards. Funding for any such experts will be requested after sufficient investigation has been completed to establish that they are in fact necessary.

## D.  SPECIFIC FUNDING REQUEST

Mr. Williams requests the appointment of Context Mitigation (Krista Smith and Megan Leschak) at a rate of **$125 per hour** (travel time to be billed at half this rate) for the purpose of developing the facts underlying Mr. Williams's claim that trial counsel was ineffective for failure to investigate Mr. Williams's post-high school experiences and medical history and failing to construct a social history narrative. Both are experienced in investigating in capital cases, and Ms. Leschak is additionally a Licensed Master Social Worker with clinical mental health experience, which is especially pertinent to Mr. Williams's case. Mr. Williams requests the Court authorize **200 hours** of their time **($25,000)**, which will be necessary to complete the steps identified above.

In addition to the fees for 200 hours of investigation time, funding will also be required for **reasonable expenses** (hotel, airfare, rental car, meals[9]) and travel time (**40 hours** total or **$2,500**) for two trips to Dallas (either for each mitigation specialist to travel there once, or one of them to travel twice, subject to travel being possible in light of the COVID-19 pandemic).

---

Pamela Blume Leonard, *Getting it Right: Life History Investigation as the Foundation for a Reliable Mental Health Assessment*, 36 HOFSTA L. REV. 963-988 (2008).

[9] As the COVID-19 pandemic situation has evolved, travel and lodging costs have fluctuated widely and it is not possible to estimate what the cost will be when travel is possible, but every effort will be made to minimize these costs.

**GRAND TOTAL: $ 27,500** plus reasonable expenses

## V.      CONCLUSION

In sum, Mr. Williams requests the following funding pursuant to § 3599(f) to investigate viable

claims of ineffective assistance of trial counsel:

| EXPERT | HOURS | TOTAL |
|--------|-------|-------|
| Mitigation Specialist | 200 hours investigative; 40 hours travel; plus reasonable expenses | **$27,500** |

## VI.     CERTIFICATION REQUEST

Should the Court deny this motion, Petitioner requests that pursuant to 28 U.S.C. § 1292(b),

this Court find and state in its order that the availability of funding for a mitigation investigation upon

the showing made here "involves a controlling question of law as to which there is substantial ground

for difference of opinion and that an immediate appeal from the order may materially advance the

ultimate termination of the litigation."

Dated: May 6, 2021

Respectfully submitted,

/s/ Bruce Anton_____
BRUCE ANTON
Bar Card No. 01274700
UDASHEN | ANTON
8150 N. Central Expressway, Suite M1101
Dallas, Texas 75206
214-468-8100
214-468-8104 fax
ba@udashenanton.com

/s/ Mary Margaret Penrose_____
MARY MARGARET PENROSE
Bar Card No. 00788179
TEXAS A&M SCHOOL OF LAW
1515 Commerce Street
Fort Worth, Texas 76102

972-310-8669
817-212-3965
megpenrose@law.tamu.edu

/s/ Amy Pickering Knight
AMY PICKERING KNIGHT
AZ Bar Card No. 031374
Admitted *pro hac vice*
KNIGHT LAW FIRM PC
3949 E. Broadway Blvd., Suite 288
Tucson, Arizona 85716
520-878-8849
amy@amyknightlaw.com

Attorneys for Petitioner