IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERIC LYLE WILLIAMS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | No. 3:20-CV-3030-N |
| BOBBY LUMPKIN, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

<u>MEMORANDUM OPINION AND ORDER DENYING WITHOUT PREJUDICE
UNOPPOSED MOTION TO EXCEED PAGE LIMITS & NOTICE OF POTENTIAL RULE 11
VIOLATIONS</u>

The matters before the Court are (1) Williams' unopposed motion to exceed this court's Local Rules governing page limitations on pleadings in capital habeas cases (specifically Local Rule CV-7.5), filed September 15, 2021 (ECF no. 58) and (2) the existence of potential violations of Rule 11, FED. R. CIV. P., contained in Williams' original federal habeas corpus petition filed September 15, 2021 (ECF no. 59).

<u>Motion to Exceed Page Limitations</u>

This court's Local Rules wisely limit the number of pages all parties may include in their respective pleadings in capital habeas cases to 100 pages for a petition and an answer and 25 pages for a reply brief.   For good cause the Court is authorized to extend those limitations.

The fundamental problems with Williams' unopposed motion to exceed page limits are (1) the motion does not explain (or even offer a clue) as to what good cause might exist for exceeding the foregoing page limits in this case; (2) the motion does not explain how much of an extension each of the parties will need beyond the limitations set out by this court's Local Rules; and (3) the motion was filed contemporaneously with Williams' original federal habeas corpus petition which

exceeds 200 pages in length and is accompanied by 47 exhibits totaling approximately 973 pages. Furthermore, as explained below, at least three of the claims presented in Williams' original petition (i.e., claims 15, 16, and 17 found on pp. 189-201 of ECF no. 59) appear to violate the requirements of Rule 11, FED. R. CIV. P., in that they present legal arguments that have repeatedly been rejected by the Fifth Circuit and federal District Courts in Texas and which the Supreme Court has repeatedly declined to review on certiorari yet Williams' original petition makes absolutely no reference to any of the well-settled case law in this Circuit rejecting the legal arguments underlying each of these three claims.

Historically, this court has been generous in granting motions seeking leave to exceed the page limitations established by Local Rule CV-7.5. But in every case in which such an extension was granted, the party requesting the extension did the courtesy of explaining (1) why the party believed such an extension was necessary and (2) prospectively suggesting exactly how much of an extension would be necessary. In contrast, in this case the parties simply filed an excessive federal habeas corpus petition and asked this court to waive the Local Rules' page limitations because "good cause exists for extending the page limitation."

The parties have already agreed to effectively delay final briefing in this case by jointly requesting entry of a new scheduling order, which this court granted (ECF no. 57), allowing Williams until next March to file an Amended Petition and absolving Respondent of any obligation to respond to Williams' original petition. Another problem with the parties' latest request to this court is its open-ended nature. They offer no clue as to just how lengthy Williams' proposed Amended Petition will be, nor how long Respondent's proposed Answer to the Amended Petition might be, nor how long Williams' Reply brief will be. At least some reasonable degree of specificity is required. This court will not grant the parties carte blanche to inundate the Clerk

with a series of excessively lengthy pleadings absent at least some rational explanation for why such is necessary in this particular case. Before granting an exemption from this court's Local Rule governing page limitations in capital habeas cases, this court needs, at a minimum, a rational explanation for why such an extension is needed and a good faith estimate of how much of an extension of the cap on pages is necessary for each party to adequately present its case. The current motion furnishes neither.

Despite reviewing Williams' original petition, this court has no assurance that this case presents anything more complex than a typical capital habeas case. Neither the facts of the capital offense in question nor the legal issues raised by Williams in his original petition appear to involve anything unique to, or uncommon in, typical capital habeas litigation in this court. Williams presents ineffective assistance claims not dissimilar to those ineffective assistance claims presented in a great many other capital habeas cases in this court, as well as challenges to the constitutionality of the Texas capital sentencing statutes and Williams' jury charge which mirror those of myriad capital habeas cases that have come before this and other Texas federal courts. *See, e.g., Holberg v. Lumpkin*, 2021 WL 3603347, *27-*54, *96-*148 (N.D. Tex. Aug. 13, 2021) (addressing a wide variety of constitutional challenges to the Texas capital sentencing scheme, several of which mirror Williams' claims in his original petition, as well as myriad claims of ineffective assistance); *Broadnax v. Davis*, 2019 WL 3302840, *9-*13, *44-*51 (N.D. Tex. July 23, 2019) (addressing multiple constitutional challenges to the Texas capital sentencing scheme, some of which mirror Williams' claims in his original petition, as well as many ineffective assistance claims), *Aff'd*, 987 F.3d 400 (5th Cir. 2021), *cert. filed* Aug. 21, 2021 (no. 21-267); *Hernandez v. Davis*, 2017 WL 2271495, *20-*44 (W.D. Tex. May 23, 2017) (rejecting a wide variety of ineffective assistance claims more factually complex that those presented by Williams

in his original petition), *CoA denied*, 750 F. App'x 378 (5th Cir. Oct. 29, 2018), *cert. denied*, 140 S. Ct. 136 (2019); *Gamboa v. Davis*, 2016 WL 6613280, *9-*30 (W.D. Tex. Aug. 4, 2016) (rejecting as bordering on the legally frivolous many constitutional challenges to the Texas capital sentencing scheme, including some of the very same legal arguments raised by Williams in his original petition herein), *CoA denied*, 782 F. App'x 297 (5th Cir. Aug. 1, 2019); *Garza v. Thaler*, 909 F.Supp.2d 578, 611-87 (W.D. Tex. 2012) (disposing of a plethora of ineffective assistance claims as well as myriad constitutional challenges to the Texas capital sentencing scheme, including many of those presented by Williams in his original petition), *CoA denied*, 738 F.3d 669 (5th Cir. 2013), *cert. denied*, 573 U.S. 949 (2014).

    Williams' original federal habeas corpus petition exceeds 200 pages. Yet it presents claims no more factually or legally complex than those presented in any of the cases listed immediately above. Despite the fact that Holberg presented far more claims in terms of sheer numbers than did Williams, and the fact the vast majority of Holberg's claims were far more complex both factually and legally than those contained in Williams' original petition, Holberg's federal habeas counsel filed an amended petition that was only 167 pages in length. Likewise, Broadnax's federal habeas counsel needed only 176 pages in their amended petition to present a series of claims which included a highly complex, multi-faceted, *Batson* claim, along with many of the same borderline frivolous challenges to the Texas capital sentencing scheme contained in Williams' claims 15, 16, and 17. Based upon a PACER review, the operative pleadings in the Hernandez, Gamboa, and Garza capital habeas cases cited above from the Western District of Texas were likewise well below 200 pages in length. More specifically, the amended petition in *Hernandez* was 73 pages; the amended petition in *Garza* was 170 pages; and the original petition in *Gamboa* was 50 pages. Considering the number and complexity of the claims raised in

Williams' original petition, the court is not inclined to grant authorization for more than 200 pages for the amended petition.

There may very well be legitimate reasons, i.e., good cause, for the parties to request an identifiable extension on this court's Local Rules' page limitations on pleadings in this case. But, thus far, the parties have not made a good faith effort to explain what those reasons might be. At this juncture, the unopposed motion to exceed the page limitations set out in Local Rule CV-7.5 will be denied without prejudice. The parties are advised that if they choose to refile their motion jointly, they should include therein (1) at least some explanation of what the "good cause" for exceeding the page limits they cryptically identified in their present motion might be and (2) proposed caps on the pages to be included in Williams' proposed Amended Petition, Respondent's proposed Answer, and Williams' proposed Reply brief, all of which need to be tied rationally to the "good cause" set forth in the parties' future motion. The parties are also encouraged to request an extension of Local Rule CV-7.5's page limitation before filing their excessively lengthy pleadings. The maxim "it is easier to beg forgiveness than ask permission" has no application in this context.

Notice of Potential Rule 11 Violations

Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part that an attorney filing a litigation document (including a federal habeas corpus petition) certifies that the document (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation and (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016). There are three ways a pleading can offend Rule 11: inadequate legal

support; inadequate factual support; and improper purpose. *American Airlines, Inc. v. Allied Pilots Ass'n*, 958 F.2d 523, 529 (5th Cir. 1992). Sanctions are appropriate under Rule 11 when a signatory to a pleading or motion fails to conduct a reasonable inquiry into the law and facts underlying his pleading or motion or if the pleading or motion signed was intended to delay, harass, or increase the cost of litigation. *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

Before a court may impose sanctions under Rule 11, the court must first give notice of the sanctionable conduct. *Matta v. May*, 118 F.3d 410, 414 (5th Cir. 1997). The filing of a federal habeas claim which eventually proves to be without merit is insufficient to warrant sanctions; rather, sanctions are appropriate in a habeas context only where the position advocated is unwarranted, which requires determining whether the claim was well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law. *Matta*, 118 F.3d at 415; *Anderson v. Butler*, 886 F.2d 111, 114 (5th Cir. 1989) (holding Rule 11 sanctions appropriate in a habeas context only in the most egregious circumstances and where the court has found them to be indispensable; the proper inquiry is whether the claim is utterly frivolous and asserted with no good faith belief in its validity).

In February 1989, the Texas Resource Center published *Defending a Capital Case in Texas*, which included more than 180 pages of "model motions" attacking various aspects of the Texas capital sentencing scheme and the Texas capital sentencing special issues. In July 1994, St. Mary's University Law School Professor Jeff Pokorak published an academic paper titled *Capital Sentencing Strategy, A Defense Primmer*, to which he attached nearly 100 pages of form motions attacking the constitutionality of almost every aspects of the Texas capital sentencing scheme. In 1996, volume I of the *Texas Criminal Appellate Manual* appeared and included a lengthy section written by Texas Resource Center staff attorney Lynn Lamberty tiled "Texas

Capital Writs, which likewise urged a broad range of constitutional challenges to the Texas capital sentencing scheme's special issues. Among the form or model motions included in these publications were challenges to the manner in which the State of Texas statutorily defines "mitigating circumstances," the absence of a burden of proof in the Texas capital sentencing scheme's mitigation special issue, and the absence of mandatory jury instructions advising capital sentencing jurors of the impact of their failure to reach a unanimous verdict favorable to the prosecution (or their failure to obtain at least ten votes favorable to the defense) on any of the capital sentencing special issues (i.e., the so-called Texas "12/10 rule").

The collective result of these publications, and various presentations made at legal conferences and seminars across the State of Texas in the ensuing decades by Prof. Pokorak, attorney Lamberty, and others with the Texas Resource Center, has been a proliferation of constitutional challenges to the efficacy of the Texas capital sentencing scheme and its special issues in state direct appeals, state habeas corpus proceedings, and federal habeas corpus proceedings challenging Texas capital sentences. As explained below, whatever the arguable efficacy of the legal arguments urged by opponents of the death penalty in Texas beginning in the 1990's, for more than two decades the Fifth Circuit and federal District Courts in Texas have consistently rejected the legal arguments underlying these facial and as-applied attacks on the constitutionality of the Texas capital sentencing scheme. Continuing to present those same arguments at this juncture amounts to flogging a long-expired equine.

Doing so without even acknowledging the existence of the well-settled Fifth Circuit case law rejecting those arguments violates both the spirit and letter of Rule 11. Absent some rational explanation as to why the Fifth Circuit's long-standing jurisprudence rejecting his constitutional attacks on the Texas capital scheme do not apply to his particular case, this court is obligated to

adhere to the Fifth Circuit's long line of decisions rejecting such challenges. In his original petition, Williams furnished no such explanation.

For instance, in his 15th claim in his original petition, Williams argues the Texas 12/10 Rule, which requires jury unanimity for any answer to the Texas capital sentencing scheme that favors the prosecution and at least ten votes for any answer which favors the defense (found in Article 37.071, § 2(b) -2(f) of the Texas Code of Criminal Procedure) violates the constitutional principles set forth in the Supreme Court's opinions in *Mills v. Maryland*, 486 U.S. 367 (1988), *McKoy v. North Carolina*, 494 U.S. 433 (1996), and *Caldwell v. Mississippi*, 472 U.S. 320 (1985). ECF no. 59 at pp. 189-93. Yet for more than a quarter century the Fifth Circuit has repeatedly rejected each of these arguments and the Supreme Court has consistently denied certiorari on the same claims. *See, e.g., Allen v. Stephens*, 805 F.3d 617, 632 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 2382 (2016); *Reed v. Stephens*, 739 F.3d 753, 779 (5th Cir. 2014), *cert. denied*, 574 U.S. 973 (2014); *Blue v. Thaler*, 665 F.3d 647, 669-70 (5th Cir. 2011), *cert. denied*, 568 U.S. 828 (2012); *Druery v. Thaler*, 647 F.3d 535, 542-45 (5th Cir. 2011), *cert. denied*, 565 U.S. 1207 (2012); *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000); *Miller v. Johnson*, 200 F.3d 274, 288-89 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000); *Hughes v. Johnson*, 191 F.3d 607, 628-29 (5th Cir. 1999); *Woods v. Johnson*, 75 F.3d 1017, 1036 (5th Cir. 1996), *cert. denied*, 519 U.S. 854 (1996); *Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th Cir. 1994), *cert. denied*, 513 U.S. 1067 (1995). More than a year ago, the Fifth Circuit expressly rejected Williams' effort in his original petition to put a new gloss on his meritless legal arguments by citing the Supreme Court's opinion in *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). *See Ruiz v. Davis*, 819 F. App'x 238, *246 n.9 (5th Cir. July 7, 2020), *cert. filed July 8, 2021 (no. 21-5048)*.

Furthermore, more than two years ago, this court rejected as legally frivolous an attack on the Texas 12/10 Rule virtually identical to the one presented by Williams in his 15th claim in his original petition, explaining there is a consistent and long line of Fifth Circuit case law rejecting such challenges. *See Broadnax v. Davis*, 2019 WL 330 2840, *11:

> The Fifth Circuit has also repeatedly rejected the same arguments underlying Broadnax's challenge to the Texas capital sentencing scheme's requirement of jury unanimity for a verdict favorable to the prosecution but only ten votes for a verdict favorable to the defense on the capital sentencing special issues. *Blue v. Thaler*, 665 F.3d at 669-70 (rejecting an Eighth Amendment challenge to the Texas twelve/ten rule); *Alexander v. Johnson*, 211 F.3d 895, 897 (5th Cir. 2000) (specifically rejecting both Fourteenth and Eighth Amendment challenges to the Texas twelve/ten rule in the course of affirming rejection of claims virtually identical to those raised by Broadnax); *Miller v. Johnson*, 200 F.3d 274, 288-89 (5th Cir. 2000) (holding *Mills* inapplicable to a Texas capital sentencing proceeding); *Woods v. Johnson*, 75 F.3d 1017, 1036 (5th Cir. 1996) (holding the same); *Hughes v. Johnson*, 191 F.3d 607, 628-29 (5th Cir. 1999) (holding both *Mills* and *McKoy* inapplicable to the Texas capital sentencing scheme); *Jacobs v. Scott*, 31 F.3d 1319, 1328-29 (5th Cir. 1994) ("Under the Texas system, all jurors can take into account any mitigating circumstance. One juror cannot preclude the entire jury from considering a mitigating circumstance. Thus, *Mills* is inapplicable."). Because the Texas capital sentencing scheme is vastly different from those employed in Maryland and North Carolina, Broadnax's reliance on the Supreme Court's opinions in *McKoy* and *Mills* is misplaced. *Alexander v. Johnson*, 211 F.3d at 897; *Miller v. Johnson*, 200 F.3d at 288-89; *Woods v. Johnson*, 75 F.3d at 1036; *Jacobs v. Scott*, 31 F.3d at 1328-29.

What makes Williams' 15th claim a violation of Rule 11 is his failure to even acknowledge the existence of a long line of Fifth Circuit case law, consistently applied by Texas federal district courts, rejecting Williams' constitutional challenges to the Texas capital sentencing scheme's 12/10 Rule. The very first step in any good faith argument for "extending, modifying, or reversing existing law or for establishing new law" is acknowledging the existence of a legal principle in opposition to the position being advocated. This is where Williams' constitutional challenges to the Texas capital sentencing scheme are deficient.

The same holds true for his challenge in his 16th claim in his original petition to the definitions of key terms included in the Texas capital sentencing scheme's future dangerousness special issue. More specifically, Williams argues that various terms used in the future dangerousness special issue ("criminal acts of violence" "probability" "continuing threat to society") are unconstitutionally vague. Yet for more than three decades the Fifth Circuit has consistently rejected this exact same argument and the Supreme Court has consistently denied certiorari review. *See, e.g., Sprouse v. Stephens*, 748 F.3d 609, 622-23 (5th Cir. 2014) (denying CoA on claim attacking as unconstitutionally vague the key terms in the Texas capital sentencing scheme's future dangerousness special issue), *cert. denied*, 574 U.S. 993 (2014); *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005) (discussing the long line of Fifth Circuit cases dating back to 1984 holding that the key terms in the Texas capital sentencing scheme's future dangerousness special issue have a common sense core of meaning that criminal juries are capable of understanding and denying a CoA on claims virtually identical to those presented by by Williams in his original petition), *cert. denied*, 547 U.S. 1073 (2006).

In his 17th claim in his original petition, Williams argues the Texas statutory definition of the term "mitigating evidence" is unconstitutionally narrow. The Fifth Circuit has likewise repeatedly rejected this same claim. *See, e.g., Spouse*, 748 F.3d at 622-23; *Blue v. Thaler*, 665 F.3d at 665-66; *Beazley v. Johnson*, 242 F.3d 248, 260 (5th Cir. 2001), *cert. denied*, 534 U.S. 945 (2001). Williams' original petition makes no effort whatsoever to even acknowledge the existence of this long line of Fifth Circuit case law, consistently the subject of denials of certiorari review, when presenting his 17th claim in his original petition.

Moreover, more than two years ago, this court explained there are long lines of Fifth Circuit opinions which render these legal arguments frivolous. *See Broadnax v. Davis*, 2019 WL 330 2840, *10-*11:

> Likewise, the Fifth Circuit has repeatedly rejected challenges to the terms in the Texas capital sentencing special issues identified by Broadnax as allegedly unconstitutionally vague. *See, e.g.*, *Sprouse v. Stephens*, 748 F.3d 609, 622-23 (5th Cir. 2014) (denying Certificate of Appealability ("CoA") on complaints about the lack of definitions of "probability," "criminal acts of violence," and "continuing threat to society" in a Texas capital sentencing jury charge); *Paredes v. Quarterman*, 574 F.3d 281, 294 (5th Cir. 2009) (holding the terms "probability," "criminal acts of violence," and "continuing threat to society" "have a plain meaning of sufficient content that the discretion left to the jury is no more than that inherent in the jury system itself"); *Turner v. Quarterman*, 481 F.3d 292, 299-300 (5th Cir. 2007) (rejecting claims that the terms "probability," "criminal acts of violence," and "continuing threat to society" were so vague as to preclude a capital sentencing jury's consideration of mitigating evidence); *Leal v. Dretke*, 428 F.3d 543, 552-53 (5th Cir. 2005) (listing numerous Fifth Circuit opinions rejecting complaints about the failure of Texas courts to define the terms "probability," "criminal acts of violence," and "continuing threat to society"). Thus, all of the key terms in his punishment phase jury charge about which Broadnax complains have a common understanding in the sense that they ultimately mean what the jury says by their final verdict they mean and do not require further definition. *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993); *Milton v. Procunier*, 744 F.2d 1091, 1096 (5th Cir. 1984). Broadnax's constitutional complaints about the trial court's failure to define the terms "probability," "criminal acts of violence," and "continuing threat to society" have repeatedly been rejected by the Fifth Circuit and are frivolous.
>
> The constitutional standard for evaluating the propriety of a capital sentencing jury charge is set forth in *Boyde v. California*, 494 U.S. 370, 380 (1990), where the Supreme Court held the test for determining whether jury instructions satisfy the Constitution is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Johnson v. Texas,* 509 U.S. 350, 367-368 (1993). Broadnax identifies no potentially mitigating evidence before the jury at the punishment phase of his trial which he contends the jury was unable to properly consider in answering one or more of the Texas capital sentencing special issues because of the lack of definitions of the terms "personal moral culpability," "moral blameworthiness," or "mitigating circumstances." *See Beazley v. Johnson*, 242 F.3d 248, 259-60 (5th Cir. 2001) (holding the Texas capital sentencing scheme's statutory definition of "mitigating evidence" as that which renders the defendant less morally blameworthy did not preclude consideration of any aspect of the defendant's character or record or any of the circumstances of the offense the defendant proffers as a basis for a sentence less than death). Likewise, the Fifth

Circuit has repeatedly rejected arguments that the Texas capital sentencing scheme's definition of "mitigation" is too narrow. *See, e.g., Sprouse v. Stephens*, 748 F.3d at 622-23 (denying a CoA on this same issue); *Blue v. Thaler*, 665 F.3d 647, 665-66 (5th Cir. 2011) (Article 37.071 does not unconstitutionally preclude the jury from considering as a mitigating factor any aspect of a defendant's character or record and any of the circumstances of the offense the defendant proffers as a basis for a life sentence); *Beazley v. Johnson*, 242 F.3d at 260 ("The definition of mitigating evidence does *not* limit the evidence considered under the third special issue (whether mitigating circumstances warrant a life, rather than a death, sentence). '[V]irtually *any* mitigating evidence is capable of being viewed as having some bearing on the defendant's 'moral culpability' apart from its relevance to the particular concerns embodied in the Texas special issues'."). Broadnax's complaints about the lack of definitions of key terms and alleged vagueness in the Texas capital sentencing special issues and his punishment phase jury charge are frivolous.

While perhaps not taken verbatim from the "form motions" and "model motions" discussed above, Williams' 15th, 16th, and 17th claims in his original petition are the lineal descendants of the now-frivolous legal arguments contained in the model and form motions which began circulating in Texas in the mid-1990's. In the decades since their publication, all of those form and model motions have routinely been denied by Texas federal District Courts in capital habeas actions, the subject of numerous opinions issued by the Fifth Circuit denying Certificates of Appealability (because the reasonableness of the District Courts' denials of relief on those claims were deemed by the Fifth Circuit not to be subject to debate among reasonable jurists), and ultimately the subjects of numerous Supreme Court orders denying petitions for writ of certiorari. *See, e.g., Garza*, 909 F.Supp.2d at 667-68 (discussing the long line of Fifth Circuit case law rejecting challenges to the allegedly unconstitutionally vague terms included in the Texas capital sentencing scheme's future dangerousness special issue); *Garza*, 909 F.Supp.2d at 679-85 (discussing the extensive Fifth Circuit case law rejecting constitutional challenges to the Texas 12/10 Rule premised upon the Supreme Court's holdings in *Mills, McKoy,* and *Caldwell*); *Bartee v. Quarterman*, 574 F.Supp.2d 624, 707-11 (W.D. Tex. 2008) (discussing the long line of Fifth

Circuit opinions rejecting challenges to the Texas statutory definition of mitigating evidence), *CoA denied*, 339 F. App'x 429 (5th Cir. July 31, 2009), *cert. denied*, 559 U.S. 1009 (2010); *Wood v. Dretke*, 386 F.Supp.2d 820, 861-63 (W.D. Tex. 2005) (discussing the extensive authority in the Fifth Circuit rejecting challenges to Texas' statutory definition of mitigating evidence), *Aff'd*, 491 F.3d 196 (5th Cir. 2009), *cert. denied*, 552 U.S. 1151 (2008).

Williams' original petition displayed willful ignorance of the foregoing well-settled Fifth Circuit case law. Similar disregard for well-settled Fifth Circuit case law in Williams' amended petition will result in a finding of a violation of Rule 11 and the imposition of sanctions upon Williams' federal habeas counsel. At a minimum, to avoid Rule 11 sanctions, in his amended petition Williams' federal habeas counsel must acknowledge the existence of the Fifth Circuit case law rejecting his legal arguments and either furnish (1) a good faith effort to distinguish his own case from the many Fifth Circuit cases rejecting his claims or (2) a rational argument for "extending, modifying, or reversing existing law or for establishing new law."

In sum, Williams' claims 15, 16, and 17 in his original petition, i.e., his complaints about alleged vagueness in the Texas capital sentencing scheme's future dangerousness special issue, Texas' statutory definition of mitigating evidence, and the constitutionality of the Texas twelve/ten rule all have been consistently rejected by the Fifth Circuit. Those Fifth Circuit decisions have been followed, sometimes for decades, by consistent denials of certiorari review by the Supreme Court. Despite the long lines of Fifth Circuit case law rejecting the legal arguments underlying Williams' 15th, 16th, and 17th claims in his original petition, Williams made no good faith effort in his original petition to distinguish any of the relevant Fifth Circuit case law rejecting his legal arguments, much less offer a nonfrivolous justification for extending, modifying, or reversing existing law or for establishing new law.

In fact, Williams' original petition does not even acknowledge the existence of any of the Fifth Circuit or Supreme Court authority contrary to his legal arguments. This is the antithesis of a good faith or nonfrivolous argument for "extending, modifying, or reversing existing law or for establishing new law." Furthermore, in the context of a federal habeas corpus proceeding, any argument for the establishment of "new law" must necessarily address the twin concerns of (1) the extremely narrow standard of review mandated by AEDPA and (2) the nonretroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288 (1989), which forecloses adoption of the new principles of federal constitutional criminal procedure in federal habeas corpus proceedings. It is in this particular regard that Williams' challenges to the Texas capital sentencing scheme are most glaringly deficient under Rule 11.

Williams' original petition has been rendered a legal nullity by virtue of the parties' agreement to entry of a new scheduling order which permit Williams until March 2022 to file an amended petition. While this court will not impose sanctions pursuant to Rule 11 in this case with regard to Williams' original petition (because it will eventually be superseded by his Amended Petition), counsel in this cause and all federal habeas counsel practicing before this court are admonished to avoid asserting claims before this court which have routinely been rejected by the Fifth Circuit without also furnishing this court some nonfrivolous legal argument for "for extending, modifying, or reversing existing law or for establishing new law" which recognizes the reality of the limitations imposed upon this court by both well-settled Fifth Circuit case law (which this court is not free to disregard), AEDPA, and *Teague*.

It is hereby ORDERED that Williams' unopposed motion to exceed this court's Local Rule governing page limitations on pleadings in capital habeas cases, filed September 15, 2021 (ECF no. 58), is DENIED without prejudice.

SIGNED October 1, 2021.

_____
**DAVID C. GODBEY**
**UNITED STATES DISTRICT JUDGE**