IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERIC WILLIAMS, *Petitioner*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:20-CV-3030-N (Death Penalty Case) |
| BOBBY LUMPKIN, Director, Texas Department of Criminal Justice, Correctional Institutions Division, *Respondent*. | § | |

**RESPONDENT LUMPKIN'S OPPOSITION TO EX PARTE PROCEEDINGS AND MEDICAL TESTING**

Eric Williams is a death-sentenced Texas inmate. He wants authorization for a "specific medical test for mitigation purposes" and he wants to justify that request ex parte. Mot. Proceed Ex Parte & Under Seal with Mot. Auth. Funds Mitigation Specialist 1–4, ECF No. 62 [hereinafter "Ex Parte Mot."].[1] The Director opposes.

---

1 In the title of his motion, Williams asks for "funds for [a] mitigation specialist," Ex Parte Mot. 1, but the body of the motion seems to want funding for a "specific medical test for mitigation purposes," Ex Parte Mot. 2. It may be that Williams forgot to update the title of his motion. *See* Mot. Proceed Ex Parte & Under Seal with Mot. Auth. Funds Mitigation Specialist 1–16, ECF No. 35 [hereinafter "First Ex Parte Mot."]. Given this inconsistency, the Director addresses what he believes is a request for expert services to conduct brain imaging. *See* 1.SHCR-01, at 139–44 (alleging that trial counsel didn't obtain brain imaging). But the Director reserves the right to oppose funding for any other purpose if his guess is wrong.

**ARGUMENT**

"In our adversary system, ex parte motions are disfavored, but they have their place." *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018). Relevant here, requests for services funding may be made ex parte if "a proper showing is made concerning the need for confidentiality." 18 U.S.C. § 3599(f). The Antiterrorism and Effective Death Penalty Act (AEDPA) changed "the presumption from an ex parte hearing for services . . . to a process which is not to be held ex parte" absent a proper showing. *United States v. Gonzales*, 150 F.3d 1246, 1264 (10th Cir. 1998); *see Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir. 1997) (noting that AEDPA "remov[ed] the ex parte proceeding requirement" for expert services funding). "Asserting a generic need for confidentiality of the sort which arises in most capital cases is not an adequate showing for purposes of the statute." *Graves v. Johnson*, 101 F. Supp. 2d 496, 499 (S.D. Tex. 2000).

Williams relies on a prior motion to justify ex parte status. Ex Parte Mot. 2 (citing First Ex Parte Mot., ECF No. 35). A good portion of that prior briefing is dedicated to convincing the Court that Congress didn't really mean what it said when it imposed the "proper showing" requirement before proceeding ex parte. First Ex Parte Mot. 4–13. The Congressional Record puts this argument to rest. Senators Hatch, Specter, and Biden debated the matter of ex parte

requests for services funding. Senator Hatch justified imposing, at a minimum, a precondition on ex parte proceedings:

> There is absolutely no reason for ex parte proceedings on Federal collateral review after the judgment is final. While such an arrangement may arguably be appropriate at the trial level, it is not defensible for post conviction collateral proceedings. It is likely that the secrecy of these proceedings serves no other purpose than to permit the defense counsel to, outside the presence of the prosecutor or the prosecution, to argue their cases, obtain extensions of time, or receive additional unwarranted investigative expenses. This is simply indefensible.

141 Cong. Rec. S7803-01, at S7813. Senator Specter agreed, stating that he "doubt[ed] there is any real quarrel about the requirement that defense lawyers ought to make an application in the presence of opposing counsel and ought to make that application in advance of wanting to hire experts." *Id.* at S7814. Then-Senator Biden ably argued the contrary, asserting that there should be no precondition to proceeding ex parte, making some of the same arguments now made by Williams. *Id.* at S7814–15, S7818–20 (arguing that retained counsel, but not appointed counsel, can hire experts without notifying prosecutors and counsel shouldn't have to disclose work product to prosecutors to get funding). But Senator Hatch disagreed, arguing that "we have had a trial, three appeals, we have had other proceedings, but at this point in the proceedings, . . . all claims should have been out in the open. . . . They should not be investigating new claims at this point." *Id.* at S7819. Senator Biden's proposed amendment, designed to eliminate the ex parte precondition, was

defeated and the law was enacted as it stands today, requiring a "proper showing . . . concerning the need for confidentiality" before proceeding ex parte. § 3599(f).

The debate above makes clear that Congress knew exactly what it was doing when it made it more arduous for capital petitioners to proceed ex parte. This should hardly be surprising as AEDPA made the standard for federal habeas relief more "difficult to meet," "imposing almost a complete bar on federal-court relitigation of claims already rejected in state proceedings," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and was "enacted to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Moreover, as noted by Senator Hatch, the constitutional protections attendant trial do not apply posttrial. *See Fuller*, 114 F.3d at 503 (noting that "the guarantees of section 3006A(e) are distinct in at least one important respect: the statute provides a defendant expert assistance for preparation for his trial, and provision of those statutory guarantees takes on a constitutional dimension not present in collateral habeas corpus proceedings"). Williams's attempt to use *Martel v. Clair*, 565 U.S. 648 (2012) and 18 U.S.C. § 3006A to wipe away the plain language of § 3599(f), or his characterization of Congress's enactment of the "proper showing" precondition as an unreasoned, technical amendment that affected no change, *see* First Ex Parte Mot. 5–11, fall flat in light of the

legislative debate above. Williams's revisionist history should be rejected, just like Congress rejected many of the arguments he now makes.

Thus, the only real question is whether Williams makes a "proper showing" regarding confidentiality. He doesn't. All he says is that his accompanying, sealed, and ex parte funding motion contains "attorney-client," "work product," and "confidential medical information." Ex Parte Mot. 2. As to assertions of attorney-client and work-product, which the Director cannot contest because there is so little detail, these are the type of generic assertions of privilege that are insufficient to warrant ex parte status. *See Jones v. Stephens*, 4:05-CV-638-Y, 2014 WL 2446116, at *2 (N.D. Tex. May 30, 2014); *Robertson v. Stephens*, No. 3:13-CV-728-G, 2013 WL 2658441, at *4 (N.D. Tex. June 13, 2013); *Patrick v. Johnson*, 37 F. Supp. 2d 815, 816 (N.D. Tex. 1999).

As to medical privilege, that didn't exist in state court. *See, e.g.,* Tex. Occ. Code § 159.003(a)(10) ("An exception to the privilege of confidentiality [of medical records] exists . . . in a criminal prosecution in which the patient is a victim, witness, or defendant."); Tex. R. Evid. 509(b) ("There is no physician-patient privilege in a criminal case."). And Williams shouldn't gain privileges in a federal court proceeding reviewing what happened in state court. *Cf*. Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). While medical

privilege might be a reason to keep the material sealed from the public, it isn't a reason to keep it from the Director.

Moreover, Williams states that he's seeking a medical test for mitigation purposes. Ex Parte Mot. 2. But whether Williams's attorneys did enough at the punishment phase, including allegations related to medical conditions, has been extensively developed and litigated. At trial, Williams called his mother (by deposition), aunt, two cousins, nine friends, three parents of friends, a teacher, a Scoutmaster, two nieces, a tenant, the dean of his law school, three attorneys, three judges, two legal field employees, two former clients, and two individuals over whom Williams was guardian ad litem. 9.SHCR-01, at 3982–96. Williams also presented testimony about the charges and conviction that may have precipitated the murders, along with testimony about his behavior while incarcerated, both historically and probabilistically. 9.SHCR-01, at 3996–99, 4044.

During state habeas, and over the span of about eighty pages, Williams alleged that his trial attorneys did not present sufficient mitigating background evidence, including evidence covering the prenatal to the time of the murders. 1.SHCR-01, at 174–251. On top of that, in another approximately sixty pages, he complained of trial counsel's failure to develop punishment phase evidence, including failing to gather evidence of brain dysfunction and inadequately challenging the State's aggravating evidence. 1.SHCR-01, at

138–73, 252–59, 263–88. All told, Williams's challenge of trial counsel's punishment phase performance totaled around 230 pages. 1.SHCR-01, at 132–318; *see also Ex parte Williams*, No. WR-85,942-01, 2020 WL 5540714, at *1–2 (Tex. Crim. App. Sept. 16, 2020) ("Applicant alleges that his trial counsel were constitutionally ineffective because they did not . . . adequately investigate mitigating evidence; investigate and challenge the State's penalty phase evidence; object to the trial court's exclusion of mitigating evidence and preserve the issue by making proper offers of proof; adequately object to the trial court's limitation of mitigating evidence; [and] object to the State's improper penalty phase argument[.]").

In addition, the state habeas trial court ordered disclosure of trial counsel's files to the State, as relevant to Williams's ineffective assistance claims, along with any sealed judicial material. 4.SHCR.1680–82, 1687–88, 1717; *see also* 4.SHCR-01, at 1726; Order, *Ex parte Williams*, No. WR-85,942-02 (Tex. Crim. App. June 27, 2018) (denying leave to file a mandamus petition on the issue of disclosing trial counsel's files). And then the state trial court held a multi-day hearing on a variety of claims, including the effectiveness of trial counsel at the punishment phase, where some of Williams's attorneys testified live and others by affidavit. 5.SHRR.19–94; 7.SHRR.7–147; 11.SHRR.DX.26. Given the above, it's highly unlikely that there is anything left to shield, either as to Williams's background, medical history, or to his trial

attorneys' investigation thereof, or that there is anything left to discover. There is simply no need for confidentiality at this point.

Because Williams has provided insufficient information to justify his sealed, ex parte request for expert services, the Director is hamstrung in responding. This, even though the Supreme Court has noted that funding motions are adversarial. *See Ayestas v. Davis*, 138 S. Ct. 1080, 1090 (2018) ("On the one side, petitioner is seeking funding that he hopes will prevent his execution. On the other, respondent wants to enforce the judgment of the Texas courts and to do so without undue delay. Petitioner and respondent have vigorously litigated the funding question all the way to this Court.").

The Director nonetheless sees no additional information that should cause the Court to change course from its prior denial of expert services funding. Order Deny Without Prej. Mot. for Investigative Funding, ECF No. 26 [hereinafter "Order Deny Funding"]. Williams's ineffective-assistance claim concerning the development and use of mitigating evidence, including brain scans, was adjudicated on the merits in state court. *Ex parte Williams*, 2020 WL 5540714, at *1–2 ("However, Applicant fails to meet his burden under *Strickland v. Washington*, 466 U.S. 668 (1984) . . . ."). Thus, as the Court noted, additional evidence cannot be considered in evaluating the claim. *See* Order Deny Funding 3. Given the state court adjudication and the number of background witnesses called on Williams's behalf at the punishment phase of

trial, he cannot show the potential merit of whatever claim he may raise—the Director presumes it would be an ineffective assistance claim, but Williams does not say so—or the usefulness or admissibility of whatever evidence he may gather. *See* Order Deny Funding 1; *see also Slater v. Davis*, 717 F. App'x 432, 435 (5th Cir. 2018) ("[E]ven if new evidence would be considered unexhausted, our task is to consider 'only the record that was before the state habeas court.'" (quoting *Clark v. Thaler*, 673 F.3d 410, 416–17 (5th Cir. 2012))). It appears that this is a fishing expedition that the Court should not countenance. *See Jones v. Davis*, 927 F.3d 365, 374 & n.54 (5th Cir. 2019). Accordingly, Williams's request for medical test funding should be denied.

**CONCLUSION**

Williams fails to make a proper showing of the need for confidentiality, so his request for an ex parte proceeding should be denied, as should his request for expert services funding.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
State Bar No. 24047707
*Counsel of Record*

Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *matthew.ottoway@oag.texas.gov*

*Counsel for Respondent*

**CERTIFICATE OF SERVICE**

I do herby certify that on November 29, 2021, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Bruce Anton
UDASHEN | ANTON
8150 N. Central Expressway, Suite M1101
Dallas, Texas 75206
*ba@udashenanton.com*

Mary Margaret Penrose
TEXAS A&M SCHOOL OF LAW
1515 Commerce Street
Fort Worth, Texas 76102
*megpenrose@law.tamu.edu*

Amy Pickering Knight
KNIGHT LAW FIRM PC
3949 E. Broadway Boulevard
Tucson, Arizona 85716
*amy@amyknightlaw.com*

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General